FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 26, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEBRA H.,<br><br>                    Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                  Defendant. | NO: 1:18-CV-03172-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER ~ 1

represented by Special Assistant United States Attorney Justin L. Martin.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is granted and Defendant's Motion, ECF No. 13, is denied.

## JURISDICTION

Plaintiff Debra H.[2] (Plaintiff) filed for disability insurance benefits (DIB) and supplemental security income (SSI) on September 8, 2014, alleging an onset date of March 31, 2011.  Tr. 246-58.  Benefits were denied initially, Tr. 137-45, and upon reconsideration, Tr. 148-59.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 5, 2017.  Tr. 38-80.  On July 26, 2017, the ALJ issued an unfavorable decision, Tr. 15-35, and on July 2, 2018, the Appeals Council denied review.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Plaintiff was 41 years old at the time of the hearing. Tr. 69. She has a high school diploma. Tr. 69. She has work experience as cherry packer, an office worker for a prosthetics company, field supervisor, and child monitor. Tr. 65, 70-72.

Plaintiff hit her head on a vice at work in September 2010 and started having headaches and vision problems. Tr. 58-59. She testified she cannot work because she always has a headache. Tr. 56. Sometimes her vision wavers. Tr. 56. She cannot work on computers and she cannot watch much television due to her vision. If she tries to focus on computers or paperwork, her eyes go in and out of focus and her headache is aggravated. Tr. 57-58. Plaintiff estimated she has seven bad headaches a month, which means she loses vision in her right eye, vomits, and cannot leave the house. Tr. 58, 62.

In April 2014, her husband at the time pointed a gun at her and threatened to kill her. Tr. 354, 717. He went to prison for this crime. Tr. 354. As a result of this incident, she has night terrors and panic attacks. Tr. 63. Sometimes she cannot leave the house. Tr. 64. She has anxiety episodes every day. Tr. 64. If she was working and had an anxiety attack or flashback, she would freeze, panic, and bolt. Tr. 65-66. She has passed out due to an anxiety attack in the past. Tr. 65. She has anxiety flareups at least a couple of times per week. Tr. 66.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by

ORDER ~ 3

substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in

ORDER ~ 4

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since March 31, 2011, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar spine disorder (spondylosis, mild levo-convex scoliosis, and degenerative disc disease with left foot drop); headaches; asthma; obesity (vs. overweight), history of supraventricular

ORDER ~ 7

tachycardia; post herpetic neuralgia; history of multiple rib fractures; mild neurocognitive disorder due to a traumatic brain injury; affective disorder (major depression); anxiety related disorders (anxiety disorder and posttraumatic stress disorder (PTSD)); and somatic disorder (pain disorder). Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> She is able to stand and/or walk for 4 hours in an 8-hour workday; she is unable to operate foot controls; she is able to occasionally balance, stoop, kneel, and crouch; she cannot climb or crawl; she must avoid concentrated exposure to extreme cold, wetness, and pulmonary irritants; she must avoid vibration and hazards (including unprotected heights); she is able to perform simple, routine tasks and follow short, simple instructions; she is able to do work that needs little or no judgment; she is able to perform simple duties that can be learned on the job in a short period[]; she requires a work environment that is predictable and with few work setting changes; and she is unable to deal with the general public (as in a sales position or another position where the general public is frequently encountered as an essential element of the work process), although incidental contact of a superficial nature with the general public is not precluded.

Tr. 19-20.

At step four, the ALJ found that Plaintiff is unable to perform past relevant work. Tr. 27. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform such as small product assembler, inspector and

ORDER ~ 8

hand packager, or electronic accessory assembler. Tr. 28. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 31, 2011, through the date of the decision. Tr. 29.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1.      Whether the ALJ properly considered the medical opinion evidence;

2.      Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.      Whether the ALJ had a duty to develop the record; and

4.      Whether the ALJ erred at step five.

ECF No. 12 at 2.

## DISCUSSION

### A.      Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly consider the opinions of treating neurologist, Peter C. Gilmore, M.D.; examining psychologist Roland Dougherty, Ph.D.; medical expert Peter Schosheim, M.D.; reviewing psychologist Diane Fligstein, Ph.D.; and treating provider Shannon Neer, PA-C. ECF No. 12 at 6-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who

ORDER ~ 9

review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social

ORDER ~ 10

workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[3] The ALJ is required to consider evidence from "other sources," but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1104.

In July 2014, Dr. Gilmore, a treating neurologist, wrote a letter indicating Plaintiff has a diagnosis of post-concussion syndrome with continuing headaches, difficulties with vision, and poor cognition. Tr. 642. He opined that "due to these problems, she is unable to work and because of poor cognition she would be unreliable." Tr. 642. He indicated that her vision caused difficulty reading and headaches are a factor in her inability to concentrate. Tr. 642. He also wrote that he had previously dictated his opinion in April 2014. Tr. 642. The ALJ gave no weight to Dr. Gilmore's opinion. Tr. 25.

First, the ALJ noted a conclusion regarding the capacity to work is a legal determination reserved for the Commissioner. Tr. 25. The ALJ is responsible for

---

[3] Effective March 27, 2017, the definition of an "acceptable medical source" changed to include some sources previously considered to be "other" sources. *See* 20 C.F.R. §§ 404.1520, 416.920 (2017). However, for licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants, the change applies "only with respect to claims filed . . . on or after March 27, 2017." 20 C.F.R. §§ 404.1502(a)(6)-(8), 416.902(a)(6)-(8) (2017).

determining whether a claimant meets the statutory definition of disability, not a physician. Social Security Ruling (S.S.R.) 96-5p, at *5 (July 2, 1996), *available at* 1996 WL 374183. A medical source that a claimant is "disabled" or "unable to work" does not require the ALJ to determine the claimant meets the definition of disability. 20 CFR §§ 404.1527(d)(1); 416.927(d)(1). It was reasonable for the ALJ to reject this portion of Dr. Gilmore's opinion on this basis.

Second, the ALJ found the record does not contain any exam records from Dr. Gilmore during the relevant period. Tr. 25. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ noted that Dr. Gilmore's office indicated that it had no records after 2010. Tr. 25 (citing Tr. 700). Thus, the ALJ concluded Dr. Gilmore had no basis upon which to determine that Plaintiff was unable to work during the relevant period.[4] Tr. 25.

However, the ALJ erroneously referenced a note from Neurological Associates of Yakima, which is not affiliated with Dr. Gilmore. Tr. 642, 700. A records request from the Social Security Administration to Dr. Gilmore's clinic,

_____

[4] Dr. Gilmore previously evaluated Plaintiff in January 2007 for her work-related back injury and L&I claim. Tr. 25, 420-22. The evaluation did not address the symptoms resulting from her head trauma which occurred in 2010.

ORDER ~ 12

Northwest Neurosciences, asked for records dated July 17, 2014, the day after Dr. Gilmore's opinion. Tr. 1047. Northwest Neurosciences responded that there were no records after July 17, 2014 and indicated, "[p]atient last seen 3/25/14." This reasonably suggests that, contrary to the ALJ's finding, Dr. Gilmore did see Plaintiff shortly before rendering his opinion. This is confirmed by other references to Dr. Gilmore in the record during the relevant period. *See* Tr. 646 (noting Plaintiff was followed by Dr. Gilmore for headaches, last seen April 2014), 750 (records review indicated Dr. Gilmore made a referral in April 2013 for migraine treatment). The ALJ's finding that Dr. Gilmore did not examine Plaintiff during the relevant period is therefore based on error.

The error impacts the ALJ's other reasons for rejecting Dr. Gilmore's opinion. Second, the ALJ found Dr. Gilmore's opinion that Plaintiff cannot concentrate is inconsistent with the record because although Roland Dougherty, Ph.D., an examining psychologist, found some memory and concentration issues in February 2015, he did not conclude Plaintiff cannot concentrate. Tr. 25. This is inconsistent with the ALJ's determination that Dr. Dougherty's findings should be rejected because they touch on medical issues rather than psychological issues. Tr. 26. Furthermore, the ALJ's finding is suspect because the record does not contain any findings regarding Plaintiff's concentration and neurocognitive disorder from a medical perspective (rather than a psychological perspective) which were credited by the ALJ. However, as discussed *supra*, Dr. Gilmore's office visit notes for the relevant period are missing from the records. Review of these records is necessary

ORDER ~ 13

to determine whether Dr. Gilmore's opinion regarding Plaintiff's concentration is supported by his findings.

Third, the ALJ found records pertaining to Plaintiff's vision do not establish that Plaintiff cannot read. Tr. 25. Dr. Gilmore did not indicate that Plaintiff cannot read; he opined that she had difficulty reading due to her vision. Tr. 642. This is consistent with Dr. Dougherty's observation that Plaintiff had "significant visual perceptual difficulties," was not able to adequately distinguish the numbers and letters during testing, and was no longer able to read due to her visual problems. Tr. 720. Again, it would be reasonable to expect that Dr. Gilmore's treatment notes may contain findings (or an absence of findings) supporting his conclusions regarding Plaintiff's vision which must be considered in evaluating his opinion.

Fourth, the ALJ concluded that the opinion that Plaintiff is unreliable is based on unsupported speculation. Tr. 25. This finding is also impacted by the ALJ's error since it is unclear whether Dr. Gilmore's conclusion is supported without reviewing his treatment notes for the relevant period.

Dr. Gilmore's opinion and the ALJ's error are especially significant because there are no other neurological opinions in the record and the ALJ rejected other opinion evidence related to Plaintiff's neurocognitive disorder and headaches. The medical expert, Peter Schosheim, M.D., an orthopedic surgeon, described himself as having expertise in musculoskeletal disease involving the back and joints. Tr. 43-44. He testified only about Plaintiff's back and neck issues and gave no opinion

about areas outside of his expertise such as Plaintiff's traumatic brain injury or headaches.[5]  Tr. 48.

The reviewing physician, Olegario Ignacio, Jr., M.D., noted, "HA [headache] and possible migraine variant (to explain the vision issues) were discussed with appropriate drug therapy noted."  Tr. 114.  The ALJ gave partial weight to Dr. Ignacio's opinion and indicated that, "[t]o the extent that Dr. Schosheim's and Dr. Ignacio's opinions differ, I defer to Dr. Schosheim's assessment because he reviewed the entire record."  Tr. 25.  Despite the fact that Dr. Schosheim reviewed the entire record, he only testified regarding impairments related to his specialty.  Thus, the ALJ essentially gave no weight to Dr. Ignacio's comment about Plaintiff's headaches, and neither Dr. Schosheim's nor Dr. Ignacio's opinion speaks to Plaintiff's neurocognitive disorder.

Dr. Ignacio cited Dr. Dougherty's February 2015 report which noted Plaintiff had "significant visual perceptual difficulties" and was not able to adequately distinguish the numbers and letters on the Trail Making test.  Tr. 720.  He noted, "[h]er responses to the mental status examination suggested some memory and concentration problems, probably due to the traumatic brain injury. . . . she is no

---

[5] In fact, the ALJ did not allow Dr. Schosheim to be questioned about Plaintiff's traumatic brain injury or any other condition outside of Dr. Schosheim's expertise.  Tr. 48.

longer able to read because of her visual problems." Tr. 722. Dr. Dougherty found that Plaintiff has the ability to do at least some detailed and complex tasks, but "[c]ognitive difficulties as noted above may interfere with her ability to perform certain [tasks] and she has significant visual problems." Tr. 722. The ALJ gave little weight to Dr. Dougherty's findings and assessment of limitations in part because Dr. Dougherty is not a medical doctor and is not qualified to assess the medical aspects of Plaintiff's condition. Tr. 26 (citing *Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003). Thus, Dr. Dougherty's comments do not sufficiently address Plaintiff's neurocognitive disorder and headaches.

Lastly, the ALJ gave slight weight to the opinions of Shannon Neer, PA-C, who treated Plaintiff regularly and gave several opinions that Plaintiff is unable to work due to her traumatic brain injury. Tr. 25-26, 729-31, 763-64, 817-19, 831-32, 844-46. Once the ALJ rejected all of the findings and opinions related to Plaintiff's neurocognitive disorder, there is no credited evidence constituting substantial evidence supporting any of the ALJ's findings related to Plaintiff's headaches, vision problems, and neurocognitive disorder. Thus, the matter must be remanded to obtain Dr. Gilmore's records from the alleged onset date through the date of his opinion and, if necessary, further develop the medical record.

Additionally, Dr. Fligstein reviewed the record and completed a mental residual functional capacity assessment in February 2015. Tr. 115-16, 129-30. She assessed moderate limitations in the ability to maintain attention and concentration for extended periods, and in the ability to perform activities within a schedule,

ORDER ~ 16

maintain regular attendance, and be punctual within customary tolerances. Tr. 115.
Dr. Fligstein opined Plaintiff is able to understand and remember simple and some
detailed work tasks and is able to maintain concentration for the performance of full-
time gainful employment, but "may encounter difficulty in maintaining her work
schedule due to depressive symptoms." Tr. 115-16.

The ALJ gave partial weight to Dr. Fligstein's opinion. Tr. 26. The ALJ
found Plaintiff's residual functional capacity is more restrictive than Dr. Fligstein's
opinion and added limitations regarding interaction with the public due to Plaintiff's
PTSD. Tr. 26. However, the ALJ did not include a limitation regarding Plaintiff's
ability to maintain a work schedule and did not otherwise address Dr. Fligstein's
finding that Plaintiff may have difficulty maintaining a work schedule due to
depressive symptoms. The ALJ need not discuss all evidence presented but must
explain why significant probative evidence has been rejected. *Vincent v. Heckler*,
739 F.2d 1393, 1394-95 (9th Cir. 1984). On remand, the ALJ should readdress Dr.
Fligstein's opinion and ensure all limitations supported by substantial evidence are
included in the RFC finding.

**B.     Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims. ECF
No. 11 at 14-17. An ALJ engages in a two-step analysis to determine whether a
claimant's testimony regarding subjective pain or symptoms is credible. "First, the
ALJ must determine whether there is objective medical evidence of an underlying
impairment which could reasonably be expected to produce the pain or other

ORDER ~ 17

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *see also Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

With respect to Plaintiff's mental impairments, the ALJ first found Plaintiff's mental health symptoms are related to a specific event and lessened over time. Tr. 21. If a claimant suffers from limitations that result from situational stressors rather than a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (finding ALJ properly rejected claimant's testimony in part based on claimant's motivation due to her stressful living situation); *Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (concluding symptom testimony was properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational").

The ALJ found Plaintiff's anxiety-related symptoms of fear, panic attacks, nightmares, and isolation were related to her history of physical and mental abuse and ongoing concerns related to her ex-husband.[6] Tr. 21. While Plaintiff has legitimate concerns about her ex-husband, the ALJ observed that she does not appear to view herself as someone who has problems interacting with others or with authority. Tr. 21, 303-04. The ALJ also noted that despite her anxiety, she

---

[6] Plaintiff's ex-husband was sentenced to 15 months in prison for threatening to kill Plaintiff and her children. Tr. 21, 354.

ORDER ~ 19

had a new boyfriend; she traveled to Oregon; she planned to attend nursing school; she goes to the gym several times per week; and she attends appointments on her own. Tr. 21-22, 54, 877, 991, 974, 1030, 1033. Accordingly, the ALJ found that she is able to engage with others, adapt to different environments, and venture out in public despite her anxiety related to her ex-husband. Tr. 22. This is a reasonable interpretation of the evidence and this is a clear and convincing reason for giving less weight to Plaintiff's mental health complaints.

Second, the ALJ found Plaintiff's mental health issues improved with medication. An impairment effectively controlled with medication is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ noted that in July and September 2016, Plaintiff reported her medication regimen had been "working really well." Tr. 22, 987, 996. In January 2016 and May 2017, Plaintiff reported her mental health was stable and she had no concerns about depressive symptoms, PTSD, or medications. Tr. 22, 974, 1021. She stopped attending therapy and was discharged for lack of follow up. Tr. 22, 976, 980. Her treating pharmacist indicated "her biggest issue is her uncontrolled pain" rather than any mental health symptoms. Tr. 22, 1021. This finding is supported by substantial evidence and constitutes a clear and convincing reason for giving less weight to Plaintiff's mental health claims.

With respect to Plaintiff's allegations of physical impairments, first the ALJ found the objective longitudinal record and the objective evidence does not support the level of limitations alleged. Tr. 22-23. While subjective pain testimony may

not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ observed the imaging and exams do not support the existence of a right foot disorder or any problems with her hands. Tr 22-23, 905, 965. Imaging shows some arthritic changes in her lumbar spine facet joints and mild scoliosis, but in September 2016 there were no findings on exam, and the medical expert, Dr. Schosheim, found Plaintiff has limitations due to her back impairment which are included in the RFC. Tr. 23-25, 46, 907, 930. The ALJ noted that Plaintiff does not appear to allege any significant limitations due to her back impairment, obesity, rib fractures, past heart condition, and neuralgia since her testimony focused on her headaches and related concerns. Tr. 22. The ALJ's finding is supported by substantial evidence with regard to the specified impairments.

The ALJ also found the record lacks objective evidence regarding Plaintiff's allegations of severe headaches. Tr. 23. The ALJ observed the record contains no diagnostic tests or studies such as a brain MRI or a head CT, and that a vision exam resulted only in a prescription for corrective lenses. Tr. 23, 765-66. However, the ALJ also found, "[s]he never saw a neurologist or other specialist for her severe headaches during the relevant period at issue in this case." Tr. 23. As discussed *supra*, this finding is based on error. Dr. Gilmore indicated that Plaintiff's poor cognition, difficulties with vision, and headaches cause an inability to concentrate. Tr. 642. Because the ALJ did not realize Dr. Gilmore saw Plaintiff

during the relevant period, this is not a legally sufficient reason for rejecting her symptoms claims regarding Plaintiff's headaches, vision issues, or neurocognitive disorder.

Second, the ALJ found Plaintiff's activities are inconsistent with the level of physical impairment alleged. Tr. 23. As noted *supra*, this can be a clear and convincing reason for giving less weight to a claimant's symptom allegations. *See Molina*, 674 F.3d at 1113. The ALJ noted that Plaintiff reported her pain medication worked well and allowed her to do activities like laundry. Tr. 23, 1030. She was able to work out at the gym several times per week and ride an ATV. 792, 947. None of these activities necessarily conflicts with Plaintiff's allegations regarding her cognitive disorder, and to the extent they do, they do not by themselves constitute a clear and convincing reason supported by substantial evidence. One weak reason is insufficient to meet the "specific, clear and convincing" standard. *Burrell v. Colvin*, 775 F.3d 1133, 1139-40 (9th Cir. 2014) *Molina,* 674 F.3d at 1112; *see also Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir.2007). Thus, the ALJ's assessment of Plaintiff's symptom complaints regarding her cognitive disorder, headaches, and vision issues is flawed and must be reconsidered on remand.

## C.   Duty to Develop the Record

Plaintiff contends the ALJ erred by failing to develop the record regarding Dr. Gilmore's treatment record. ECF No. 12 at 4-6. In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the

ORDER ~ 22

claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan*, 242 F.3d at 1150; *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence to resolve any inconsistency in the evidence, when the evidence is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. §§ 404.1517, 404.1519a, 404.1520b(2), 416.917, 416.919a, 416.920b(2). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). For the reasons discussed *supra*, this matter is remanded so the ALJ can obtain and review Dr. Gilmore's treatment records.

**D.    Step Five**

Plaintiff contends the ALJ erred at step five by failing to include vision limitations in the hypothetical to the vocational expert. ECF No. 12 at 16-17. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*,

807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes the ALJ erred by finding no vision limitations. ECF No. 12 at 16-17. While the ALJ's findings regarding Plaintiff's neurocognitive disorder, headaches, and vision issues are not supported by substantial evidence, the Court does not conclude that any particular limitations regarding Plaintiff's vision, headaches, or cognitive disorder should have been included in the RFC. The ALJ erred in determining that Dr. Gilmore's opinion is not supported by treatment notes, which undermines all other relevant findings. Since the matter is remanded for development of the record and reconsideration of the opinion evidence, the ALJ must also revisit the sequential evaluation and ensure all limitations supported by substantial evidence are included in the RFC and hypothetical to the vocational expert.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, on remand, the ALJ shall obtain and review Dr. Gilmore's treatment record for the relevant period and reconsider his opinion. The ALJ shall ensure substantial evidence supports any findings regarding Plaintiff's cognitive disorder, headaches, and vision issues, which may involve further development of the record such as a consultative examination or testimony from a medical expert, as the ALJ

ORDER ~ 24

determines is appropriate. The ALJ also shall reconsider all other medical opinion evidence and Plaintiff's symptom complaints and conduct a new sequential evaluation in light of the findings contained in the newly developed record.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** September 26, 2019.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge